**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CRIMINAL ACTION NO. 08-49-DLB**

**UNITED STATES OF AMERICA**                                                    **PLAINTIFF**


**v.**                           **REPORT AND RECOMMENDATION**


**WILLIE STOKES**                                                              **DEFENDANT**

**\* \* \* \* \* \* \* \* \* \***

On April 13, 2015, this matter came before the Court for a Final Revocation Hearing on the U.S. Probation Office's Report that Defendant Willie Stokes had violated conditions of his supervised release. Defendant was present in Court and represented by Kerry L. Neff, and the United States was represented by Assistant United States Attorney Elaine Leonhard. The proceeding was electronically recorded and is contained in the Court's audio file at KYED-COV_2-08-cr-49-DLB-CJS–008-20150413-144420; the official recording of this proceeding was certified by Linda Tierney, Deputy Clerk.

**I.      Background**

On December 10, 2009, Defendant pleaded guilty to one count of conspiracy to distribute over 5 grams of cocaine base and one forfeiture count. (R. 228). On March 19, 2010, the presiding District Judge sentenced Defendant to a total term of imprisonment of 60 months with an 8-year term of supervised release to follow. (R. 259, 262). On December 19, 2013, Defendant was released to begin his 8-year term of supervised release. (R. 429).

On July 7, 2014, Defendant reported to the Probation Office for a drug test and his urine specimen tested positive for marijuana. Defendant admitted to the Probation Officer to using marijuana at a family function. The Probation Officer reported the violation to the presiding District Judge, who adopted the Probation Officer's recommendation of referring Defendant for counseling. (R. 408).

On December 3, 2014, Defendant reported to the Probation Office as required, and was informed that a urine specimen would be collected for drug testing. Defendant admitted to a new use, but prior to collection of the specimen, he passed out and was taken to the hospital. The Probation Office later obtained the results of a drug test performed at the hospital that revealed a positive result for marijuana. On December 23, 2014, Defendant's urine sample again tested positive for marijuana, but the Probation Office was unable to determine if the results of this test were from a new use. The Probation Officer notified the presiding District Judge of Defendant's two positive drug tests, recommending that Defendant continue in substance abuse counseling but asking that a condition be added for Defendant to receive mental health treatment. (R. 413). The Probation Officer explained she was recommending that a mental health treatment condition be added because Defendant's substance abuse therapist indicated Defendant was in need of mental health treatment to assist him with depression, anxiety, and grief. (*Id.*). The presiding District Judge then modified his conditions to include mental health treatment. (*Id.*).

Defendant now stands before the Court charged with the following violations:

| | |
|---|---|
| **Violation # 1:** | The Defendant shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician. (Grade C violation). |

2

On March 10, 2015, Defendant reported to the Probation Office and provided a urine specimen for drug testing, but the specimen appeared adulterated.  Defendant ultimately admitted to the Probation Officer to using marijuana on March 7, 2015, stating that he used marijuana with individuals who gave him a ride home from work.  Defendant signed an admission report. Defendant reported as instructed the following day to provide another urine specimen, which tested positive for marijuana.

> **<u>Violation # 2:</u>**   The Defendant shall not commit another federal, state or local crime and shall not illegally possess a controlled substance. (Grade B violation).

Defendant admitted to using marijuana on March 7, 2015.  Under Sixth Circuit precedent, use is equivalent to possession and therefore under the circumstances considered a violation of federal law, 21 U.S.C. § 844(a).

At the final hearing on these charged violations, defense counsel informed the Court that Defendant was prepared to admit to the charges and proceed with a discussion of an appropriate sentence.  Prior to taking his plea, the undersigned explained to Defendant the statutory maximum term of incarceration and supervised release as well as the sentencing options available to the Court. The undersigned also informed Defendant that the presiding District Judge imposing the final sentence was not obligated to impose the sentence recommended by the undersigned.  Defendant acknowledged his understanding and stated he was prepared to admit to the violations.  Accordingly, after being placed under oath, Defendant admitted and entered a guilty plea to the violations of his supervised release as set out in the March 17, 2015, Supervised Release Violation Report of the U.S. Probation Officer.  Defendant did not waive his right to allocution.

3

The undersigned is satisfied from the dialogue with Defendant that he understands the nature of the pending charges, has had ample opportunity to consult with counsel, understands that no promises have been made to him about any final sentence to be imposed in exchange for his admissions regarding the charges, and that he enters his guilty plea knowingly and voluntarily. Therefore, based on Defendant's plea of guilty to the allegations, the undersigned finds and will recommend that the District Court find that Defendant has violated the conditions of his supervised release as charged. This, then, takes us to the issue of sentencing.

## II.  Sentencing

### A.  Legal standard and sentencing guidelines

The Court may revoke a term of supervised release after finding that a defendant has violated a condition of supervised release. *See* 18 U.S.C. § 3583(e)(3). The Court must revoke a defendant's supervised release where the defendant is found to have possessed a controlled substance, *see* 18 U.S.C. § 3583(g), or upon a finding of a Grade A or B violation, *see* U.S.S.G. § 7B1.3(a)(1). Application Note 6 to Section 7B1.4 of the Guidelines, however, provides that a court can consider in the case of a defendant with a failed drug test whether the availability of appropriate substance abuse programs warrants an exception from the requirement of mandatory revocation and imprisonment. *See* U.S.S.G. § 7B1.4, app. note 6 (*citing* 18 U.S.C. §§ 3563(a), 3583(d)).

The Court is also mindful of the need to impose a sentence that is sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a). *See id.* § 3583(e). Accordingly, in making a determination of an appropriate sentence, the sentencing court is to consider:

> 1.  The nature and circumstance of the offense and the history and characteristics of the Defendant, *see* 18 U.S.C. § 3553(a)(1);

4

2.     The need for the sentence imposed to afford adequate deterrence to criminal conduct, *see* 18 U.S.C. § 3553(a)(2)(B); to protect the public from further crimes of the Defendant, *see* 18 U.S.C. § 3553(a)(2)(C); and to provide the Defendant with needed educational or vocational training, medical care, or other corrective treatment in the most effective manner, *see* 18 U.S.C. § 3553(a)(2)(D);

3.     The kinds of sentence and the applicable sentencing range established in the United States Sentencing Commission's Sentencing Guidelines, any amendments thereto, and any associated policy statements made by act of Congress or issued by the Sentencing Commission and in effect on the date the Defendant is sentenced, for a violation of a term of supervised release, *see* 18 U.S.C. § 3553(a)(4),(5);

4.     The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, *see* 18 U.S.C. § 3553(a)(6); and,

5.     The need to provide restitution to any victims of the offense, *see* 18 U.S.C. § 3553(a)(7).

18 U.S.C. §§ 3583(e) and 3553(a); *see also United States v. Williams,* 333 F. App'x 63, 69 (6th Cir. 2009).  In determining an appropriate sentence, the applicable policy statements in the Sentencing Guidelines, *see* United States Sentencing Guidelines (U.S.S.G.) Chapter 7, Part B, and the factors set out in 18 U.S.C. § 3553(a) must be considered.  The undersigned has carefully considered the factors listed in 18 U.S.C. §§ 3583(e) and 3553(a).

Here, considering that Defendant's underlying criminal offense is a Class A felony, the maximum term of incarceration upon revocation of supervised release is five years.  *See* 18 U.S.C. § 3583(e)(3).  Section 7B1.4 of the Sentencing Guidelines suggests a revocation range of imprisonment of 21 to 27 months, based upon Defendant's criminal history category of VI and the most serious violation as admitted by him being that of a Grade B.  Defendant may also be placed back on supervised release following any term of imprisonment that is imposed upon revocation. Here, the maximum term of further supervised release under the statute would be life because the

5

term of supervised release authorized by statute for the offense that resulted in the original term of supervised release provides no maximum period of time that a defendant can be placed on supervised release. *See* 18 U.S.C. § 3583(h); 21 U.S.C. § 841(b)(1)(B).

**B.     Summary of arguments of counsel regarding sentencing**

In discussing an appropriate sentence, defense counsel acknowledged that revocation is mandatory, but noted the Court has the authority to sentence Defendant to a treatment program in lieu of incarceration. *See* 18 U.S.C. § 3583(d) and U.S.S.G. § 7B1.4 app. note 6. Defense counsel pointed out that Defendant's violations all occurred after his mother's death and that prior to her death Defendant was compliant with his conditions. Further, other than his marijuana usage, Defendant has continued to be compliant with the other conditions of his release. Defense counsel stated that an inpatient treatment program would best benefit Defendant and society. Counsel asked that if the Court is not inclined to order treatment in lieu of incarceration, that the term of incarceration be the minimal term necessary under the statute. Defense counsel further asked that if the Court decides to impose a term of incarceration, that it impose minimal, if any, supervision to follow.[1]

Defendant also allocuted before the undersigned, stating he understands the seriousness of his marijuana addiction, and he wants to get treatment. Defendant stated that he makes no excuses for his behavior, it was the "dumbest" thing to do, and he asked the Court to put him in treatment.

The United States acknowledged that the Court has discretion to sentence Defendant as he is requesting and accepted defense counsel's representation that the timing of Defendant's first

---

[1]Counsel explained that while he did not know whether the Court has discretion under the circumstances to not impose a term of supervised release, he was making the alternative request for no supervision in the event the Court has such discretion.

violation coincided with his mother's death, but argued this case is not appropriate for a below Guidelines sentence and certainly not treatment only. The United States noted that it was concerned with the number of violations Defendant has committed in the short time he has been on supervision. The United States also noted that the violations are all for the same type of conduct–marijuana use–which evidences Defendant is not taking advantage of the resources being offered him for substance abuse treatment. Further, the Government stated that Defendant has a significant criminal history that also involved drug crimes. For these reasons, the United States asked the Court to impose a sentence of incarceration, and advocates that the low end of the Guidelines would be appropriate. The United States also stated it believes a term of supervision with substance abuse treatment would appear appropriate, but deferred to the Probation Office as to whether they believe Defendant can benefit from the imposition of an additional term of supervised release.

Lastly, upon inquiry by the Court, United States Probation Officer Suter explained the treatment afforded Defendant thus far. After Defendant's first positive drug test, she referred him for substance abuse treatment. The treatment provider notified the Probation Officer that he believed Defendant's issues were outside of his realm and recommended that Defendant be seen by a mental health specialist. The Probation Officer referred Defendant for dual diagnosis treatment to include substance abuse and mental health treatment. After the last positive drug test, the Probation Officer referred Defendant for intensive group substance abuse counseling in addition to his individual dual diagnosis treatment. The treatment provider recently reported that Defendant has been engaged in treatment and was doing everything he should in his counseling sessions. The provider reported he believes Defendant is trying to take advantage of this opportunity. Probation

Officer Suter also testified that she thinks Defendant would benefit from further supervision and recommends that a term of supervised release be imposed.

### III.    Analysis and Recommendation

Upon consideration, the undersigned recommends that Defendant's supervised release be revoked and that he be sentenced to a 14-month term of incarceration with a term of supervised release to follow that would expire December 18, 2021, the supervision originally set by the Court at sentencing.   Under 18 U.S.C. § 3583(g) and § 7B1.3(a)(1) of the Sentencing Guidelines, Defendant's supervised release must be revoked in light of his possession of a controlled substance and admission to a Grade B violation.  Although the Court can consider whether the availability of appropriate substance abuse programs warrants an exception from the requirement of mandatory revocation in the case of a defendant with a failed drug test, *see* 18 U.S.C. § 3583(d); U.S.S.G. § 7B1.4 app. note 6, such substitution is not warranted here.  However, while treatment in lieu of incarceration is not appropriate here, the Court also finds that the advisory Guidelines range of 21 to 27 months is likewise not appropriate and is instead recommending a period of incarceration below the advisory Guidelines range.  *See United States v. Perez-Arellano*, 212 F. App'x 436, 438 (6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, U.S.S.G. § 7B1.4, such statements 'are merely advisory' and need only be considered by the district court before sentence is imposed.") (*quoting United States v. McClellan*, 164 F.3d 308, 310 (6th Cir. 1999)).

Here, the Court is mindful that while Defendant stands before it for two violations, both stem from the same circumstance, his admitted use to marijuana.  But for the violation charging Defendant with committing another federal or state crime as a result of his admitted use, a Grade

B violation, he would be looking at a Guideline range of 8 to 14 months for his Grade C violation. Thus, Defendant's criminal history category of VI, coupled with the added consequence of his behavior resulting in a Grade B violation also being charged, increases the advisory Guidelines range for sanctioning his failure to abide by conditions of supervision to, in this instance, the point of being excessive for the behavior charged.

A 14-month term of incarceration is more appropriate under the sentencing considerations. Specifically, upon Defendant's release from prison, he made positive strides in turning his life around: he obtained a job, was reconnecting with his children, and was benefitting from the guidance of his Probation Officer. However, Defendant's mother died and he experienced the added traumatic circumstance of finding her. In his grief, he resorted back to his marijuana addiction. Defendant has not had any other violations of his conditions other than those stemming from his admitted marijuana addiction and all violations occurred after his mother's death.[2]

In addition, Defendant has only had the benefit of the condition imposing dual diagnosis counseling to include both substance abuse and mental health treatment since December 29, 2014, and did not begin his intensive group counseling until March 2015. Probation Officer Suter's comments indicate that Defendant is compliant with treatment and appears to be trying to conquer his addiction. This is also a nonviolent offense. The Court does not diminish the seriousness of Defendant's use of an illegal substance, and it appears neither does Defendant, given his statements that he now understands the need to view and treat an addiction to marijuana as seriously as an addiction to any other controlled substance.

---

[2]The Probation Officer noted that Defendant had recently lost his job as a result of his positive drug test, but that he reported this fact to the Probation Office.

9

However, the inpatient treatment rather than incarceration that Defendant advocates for is not appropriate here.  The Court cannot ignore Defendant's repeated refusal to take advantage of the breaks afforded him and to abide by the conditions of his release.  After his first violation, the presiding District Judge provided Defendant with an opportunity to avoid incarceration by imposing a condition of substance abuse treatment.  The presiding District Judge later added a condition for mental health treatment to assist Defendant in his grief and depression.  While his dual treatment was short in duration, the Court cannot ignore that during this treatment period, Defendant was found to have violated the Court's trust and again tested positive to marijuana.  Further, the Court does not take lightly the fact that on March 10, 2015, it appeared Defendant submitted an adulterated specimen to his Probation Officer for testing.  The Probation Office is here to assist Defendant and its efforts are curtailed by such conduct.  Thus, Defendant has refused to incorporate the lessons learned from his prior violations and is charged with similar behavior that evidences at least some reluctance to participate fully in his treatment.

Sanctioning a defendant's breach of trust is a fundamental principle underlying sentencing for supervised release violations.  *See United States v. Branch,* No. 09-1996, 2010 WL 5423743, at *3 (6th Cir. Dec. 28, 2010) (citing U.S.S.G. ch. 7, pt. A, introductory cmt. 3(b)).  A term of imprisonment is required here to impress upon Defendant the seriousness of his conduct in refusing to comply with the terms of his supervised release.  But as explained above, a sentence that is below the range described by the applicable Guidelines and Policy Statements is sufficient to reflect the seriousness of this violation, the gravity of the breach of the Court's trust, the need to protect the public, and the need to deter criminal conduct and provide necessary treatment.  *See* 18 U.S.C. § 3583(e).

The Court must also consider the need to avoid unwarranted disparities in sentencing among similarly situated defendants. A term of 14 months of imprisonment represents a 7-month deviation from the low end of Defendant's Guideline range. In recommending such a deviation, the Court has considered the § 3553(a) factors imported into the 3583(e) analysis. Personal circumstances involving the death of his mother led to his relapse in his fight against his addiction and breaching the Court's trust. A 14-month term of imprisonment, coupled with successful completion of a substance abuse program upon release from prison as directed by the Probation Office, is appropriate to meet the goals of sentencing here. Thus, a sentence of 14 months of imprisonment will be recommended as it is sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a).

A court also may reimpose supervised release following revocation, for a maximum period that usually subtracts any term of imprisonment actually imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). The maximum term of supervision the Court can impose post-revocation depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See* 18 U.S.C. § 3583(h). The general supervision term limits of § 3583(b) apply "[e]xcept as otherwise provided." *See id*. § 3583(b). Here, the maximum term of supervised release would be life. *See* 21 U.S.C. § 841(b)(1)(B) (providing for no maximum term for supervised release for the underlying offense). Based upon the facts described above, a period of supervised release that permits Defendant to complete what the presiding District Judge originally intended for him–an eight-year term of supervision set to expire on December 18, 2021–will provide Defendant the opportunity to obtain assistance to successfully transition back into society. *Johnson v. United States*, 529 U.S. 694, 708-09 (2000) ("The congressional policy in providing for a term of supervised release after incarceration is to improve the odds of a successful transition from the

prison to liberty."); *United States v. Sizemore*, No. 6:03-18, 2015 WL 417879, at *5 (E.D. Ky. Jan. 30, 2015) (reimposing supervised release to expire as originally set).  Accordingly, the undersigned will recommend that following Defendant's 14-month term of incarceration he be returned to the originally imposed term of supervision with the same conditions as currently imposed plus the additional condition that he be placed in an inpatient treatment program immediately upon his release from imprisonment.

## IV.   Conclusion and Recommendations

In conclusion, after a thorough review of Defendant's Presentence Investigation Report, the factual circumstances of the violations, and the case record, **IT IS RECOMMENDED** that:

1.      Defendant, **WILLIE STOKES,** be found to have **VIOLATED** the terms of his supervised release as set out in the March 17, 2015, Supervised Release Violation Report;

2.      Defendant's supervised release be **REVOKED;**

3.      Defendant be sentenced to the custody of the Attorney General for a term of **FOURTEEN (14) MONTHS imprisonment, credit to be given for time served since his detention on the charged violations,** with a term of supervised release to follow, terminating on December 18, 2021, under the same conditions as previous imposed, including substance abuse and mental health treatment; and the additional condition that Defendant be placed in an inpatient treatment program as directed by the Probation Office to begin immediately upon Defendant's release from imprisonment; and,

4.      Defendant having preserved his right to allocute, the Court set the matter for an allocution hearing unless Defendant notifies the Court in writing within **fourteen (14) days** of this

Report and Recommendation that he wishes to waive allocution to the District Court prior to sentencing.

Specific objections to this Report and Recommendation must be filed within **fourteen (14) days** of the date of service or further appeal is waived.  28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(2); *Thomas v. Arn*, 728 F.2d 813, 815 (6th Cir. 1984), *aff'd*, 474 U.S. 140 (1985); *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Dated this 13th day of May, 2015.

Signed By:

*Candace J. Smith*

United States Magistrate Judge

G:\DATA\S.R. violations R&R\08-49-DLB Stokes R&R final.wpd

13